568 S.E.2d 361

**William LEWIS, Respondent,**

v.

**PREMIUM INVESTMENT CORPORATION, Petitioner.**

No. 25510.

Supreme Court of South Carolina.

Heard Feb. 7, 2002.

Decided Aug. 5, 2002.

Linda Weeks Gangi, of The Thompson Law Firm, of Conway, for petitioner.

William Paul Young, of North Myrtle Beach, for respondent.

Justice BURNETT.

The Court granted a writ of certiorari to review the Court of Appeals' decision in *Lewis v. Premium Investment Corp.*, 341 S.C. 539, 535 S.E.2d 139 (Ct.App.2000). We affirm as modified.

## *FACTS*

On October 29, 1976, Respondent William Lewis (Purchaser) entered into an installment sales contract to purchase real estate in North Myrtle Beach from Petitioner Premium Investment Corporation (Seller). The contract contains the following default provision:

> In the event the Purchaser should fail to make any due installment, and such default shall continue for a period of thirty (30) days, the Seller shall have the right to declare this contract terminated and all amounts previously paid by the Purchaser will be retained by the Seller as rent.

Four months after executing the contract, Purchaser placed a mobile home on the lot and his family moved in. Purchaser made all payments through July 1988.[1] After July 1988, no further payments were made.

In October 1989, one year after Purchaser's default, Seller mailed Purchaser a notice canceling the contract. The notice was returned "unclaimed" to Seller. Although sent by certified mail to the correct address, Purchaser asserts he did not receive the notice.

In 1992, Purchaser's wife contacted Seller's representative to determine if he would allow her to assume the payments. The representative passed away without making a commitment.

On August 27, 1996, Purchaser's attorney forwarded Seller a check for $2,451.34. Seller refused to accept the check.

At the time of default (August 1988), Purchaser had made 141 of the approximately 182 monthly payments and owed $2,440.14. The balance as of August 31, 1998, was $7,726.33.

---

1. The contract price was $7,500 plus interest. Purchaser paid $75.00 as a down payment. Monthly payments were $75.00.

■ Purchaser brought this action for breach of contract and specific performance. In its amended answer and counterclaim, Seller alleged Purchaser was in default and sought an order terminating the contract. Alternatively, Seller sought judgment in the amount of $7,443, reasonable attorney's fees, and foreclosure of any equitable interest Purchaser may have obtained as a result of the transaction.[2]

The master-in-equity determined Purchaser was in default of the agreement and Seller had the right to terminate the agreement pursuant to its terms. The Court of Appeals reversed, holding Purchaser had an equitable interest in the property and, therefore, Seller's right to seek forfeiture or to foreclose was subject to Purchaser's right of redemption which could not have been waived by the agreement. *Id.*

## ISSUE

Did the Court of Appeals err by declining to apply the forfeiture provision of the installment land contract, instead determining Purchaser has an equitable interest in the property which includes a right of redemption upon default?

## DISCUSSION

Whether an equitable right of redemption exists in spite of a strict forfeiture provision in an installment land contract has not been specifically decided by this Court. In deciding the answer to this question, we must determine whether equitable principles may alter the clear and unambiguous terms of the parties' contract.

### Installment Land Contracts

Real property is often sold under contracts that provide for the payment of the purchase price in a series of installments. These contracts, usually termed installment land contracts, are drafted in many ways. Typically, the vendor retains legal title to the property until all of the purchase price has been paid ... Also typically, the purchaser is

---

**2.** The parties agree this is an action in equity. *Collier v. Green,* 244 S.C. 367, 137 S.E.2d 277 (1964) (specific performance lies in equity); *Wilder Corp. v. Wilke,* 324 S.C. 570, 479 S.E.2d 510 (Ct.App.1996) (actions for foreclosure or cancellation of instruments are in equity).

entitled to immediate possession ... Installment contracts almost always contain forfeiture clauses. When enforced, these clauses enable the vendor to terminate the contract, recover the property, and retain all installments paid when the purchaser defaults.

15 RICHARD R. POWELL, REAL PROPERTY '84D.01 at 3 (2000); *Ellis v. Butterfield*, 98 Idaho 644, 570 P.2d 1334, 1336 (1977) (installment land contract is "frequently called a 'poor man's mortgage' because the vendor, as with a mortgage, finances the purchaser's acquisition of the property by accepting installment payments on the purchase price over a period of years, but the purchaser does not receive the benefit of those remedial statutes protecting the rights of mortgagors.").[3] Contrary to existing mortgage protections, a seller may typically avoid foreclosure procedures by including a forfeiture remedy in the installment land contract. *See* Matthew Cole Bormuth, note, *Real Estate B The Wyoming Installment Land Contract: A Mortgage in Sheep's Clothing? Or What You See Isn't What You Get,* 28 LAND AND WATER LAW REVIEW 309 (1993); Juliet M. Moringiello, *A Mortgage by Any Other Name: A Plea for the Uniform Treatment of Installment Land Contracts and Mortgages under the Bankruptcy Code,* 100 DICK. L.R. 733 (1996) (forfeiture remedy makes installment land contract more favorable to vendor than seller-financed mortgage).

## *South Carolina Law*

 Basic contract law provides that when a contract is clear and unambiguous, the language alone determines the contract's force and effect. *C.A.N. Enterprises, Inc. v. South Carolina Health & Human Servs. Fin. Comm'n,* 296 S.C. 373, 373 S.E.2d 584 (1988). It is not the function of the court to rewrite contracts for parties. *See Gambrell v. Travelers Ins. Cos.,* 280 S.C. 69, 310 S.E.2d 814 (1983).

---

3. An installment land contract does have advantages for buyers. In addition to immediate possession, installment land contracts offer the benefits of a low down payment and easy credit requirements. Buyers do not have to procure expensive and, sometimes unavailable, traditional mortgage financing. Closing costs are often minimal and, since there is no outside lender, there are no loan origination fees. Eric T. Freyfogle, *Vagueness and the Rule of Law: Reconsidering Installment Land Contract Forfeitures,* 1988 DUKE L.J. 609.

 Parties to a contract may stipulate as to the amount of liquidated damages owed in the event of nonperformance. *Tate v. Le Master,* 231 S.C. 429, 99 S.E.2d 39 (1957). Where, however, the sum stipulated is plainly disproportionate to any probable damage resulting from breach of contract, the stipulation is an unenforceable penalty. *Id.; Kirkland Distributing Co. of Columbia, S.C. v. United States,* 276 F.2d 138 (4th Cir.1960). Equity will not enforce a penalty for breach of contract. *South Carolina Dep't of Health and Envtl. Control v. Kennedy,* 289 S.C. 73, 344 S.E.2d 859 (Ct.App.1986). "Equity does not favor forfeitures or penalties and will relieve against them when practicable in the interest of justice." *Lane v. New York Life Ins. Co.,* 147 S.C. 333, 374, 145 S.E. 196, 209 (1928) *citing Bangert v. John L. Roper Lumber Co.,* 169 N.C. 628, 86 S.E. 516, 517 (1915).

 The above-stated principles of contract law are consistent with the conclusion that a provision in an installment land contract declaring forfeiture in the event of purchaser default can, in particular circumstances, constitute a penalty. In those circumstances, as in other contractual instances where a stipulated sum amounts to a penalty, we conclude it would be inequitable to enforce the forfeiture provision without first allowing the purchaser an opportunity to redeem the installment contract by paying the entire purchase price.

Our conclusion is supported by authority from other jurisdictions. In numerous other states, courts claim an equitable power to "deny or delay forfeiture when fairness demands." Freyfogle, *supra* 620; *see Hatfield v. Mixon Realty Co.,* 269 Ark. 803, 601 S.W.2d 894 (Ct.App.1980); *Cedar Lane Investments v. American Roofing Supply of Colorado Springs, Inc.,* 919 P.2d 879 (Colo.Ct.App.1996); *Ellis v. Butterfield, supra; Nelson v. Robinson,* 184 Kan. 340, 336 P.2d 415 (1959); *Perkins v. Penney,* 387 A.2d 205 (Me.1978); *Rothenberg v. Follman,* 19 Mich.App. 383, 172 N.W.2d 845 (1969); *O'Meara v. Olson,* 414 N.W.2d 563 (Minn.Ct.App.1987); *Beck v. Strong,* 572 S.W.2d 484 (Mo.Ct.App.1978); *Sharp v. Holthusen,* 189 Mont. 469, 616 P.2d 374 (1980); *Martinez v. Martinez,* 101 N.M. 88, 678 P.2d 1163 (1984); *Lamberth v. McDaniel,* 131 N.C.App. 319, 506 S.E.2d 295 (1998); *Straub v. Lessman,* 403 N.W.2d 5 (N.D.1987); *T–Anchor Corp. v. Travarillo Assocs.,* 529 S.W.2d 622 (Tex.Civ.App.1975); *Call v. Timber Lakes*

*Corp.*, 567 P.2d 1108 (Utah 1977); *Bailey v. Savage*, 160 W.Va. 523, 236 S.E.2d 203 (1977); *see also* 4 Richard R. Powell, REAL PROPERTY § 37.21[1][c] at 132 (2001) ("[t]he main problem with the forfeiture remedy is that it often puts the seller in too favorable a position and, therefore, is subject to attacks based on equitable considerations of unfairness and unconscionability."). In fact, the authoritative treatise on real property law provides, "no state today is likely to condone a purchaser forfeiture that greatly exceeds the vendor's loss." 15 Powell, REAL PROPERTY § 84D.01[4] at 12.

■ As discussed at length in *Bartles v. Livingston*, 282 S.C. 448, 319 S.E.2d 707 (Ct.App.1984), the common law recognized an equitable right of redemption in the context of mortgages well before any statutory right was granted. The mortgagor was given an equitable right to redeem the property irrespective of the terms of the mortgage and this right to redeem was considered an equitable interest in the land. For years, in an executory contract for the sale of land our Court has equated the vendor with the mortgagee and the vendee with the mortgagor. *Dempsey v. Huskey*, 224 S.C. 536, 80 S.E.2d 119 (1954).[4] There is no equitable reason why the right of redemption should not likewise be afforded to vendees in an installment land contract in appropriate circumstances.

■ For the above reasons, we hold courts of equity can relieve a defaulting purchaser from the strict forfeiture provision in an installment land contract and provide the opportuni-

---

4. The Court of Appeals has specifically held that in an installment land contract, the vendee in possession of the land is considered the owner of an equitable interest in the property. *Southern Pole Bldgs., Inc. v. Williams*, 289 S.C. 521, 347 S.E.2d 121 (Ct.App.1986).

We note the right of redemption is distinguishable from an equitable estate which may pass to the purchaser under the theory of equitable conversion. Unlike the equitable right of redemption, the theory of equitable conversion does not apply if the parties provide to the contrary by contract. *Brook v. Council of Co–Owners of Stones Throw Horiz. Prop. Regime I*, 315 S.C. 474, 445 S.E.2d 630 (1994). In this case, the contract provides that, upon default, all amounts previously paid will be retained by Seller as rent. Although this provision may prevent Purchaser from claiming an equitable estate in the property for the amount of the payments made, it cannot defeat his equitable right of redemption.

ty for redemption when equity so demands.[5] Accordingly, this matter is remanded to the master-in-equity to determine whether Purchaser has an equitable right of redemption.

The decision of the Court of Appeals is **AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, PLEICONES, JJ., and Acting Justice George T. Gregory, Jr., concurs.

---

5. A variety of case-specific factors should be considered to determine if redemption is equitable under the circumstances. *See Cedar Lane Investments v. American Roofing Supply of Colorado Springs, Inc., supra* (the amount of the purchaser's equity, the length of the default period and the number of defaults, the amount of monthly payments in relation to rental value, the value of improvements to the property, the adequacy of the property's maintenance); *Rothenberg v. Follman*, 19 Mich.App. 383, 172 N.W.2d 845 (1969) (whether forfeiture is unreasonable depends upon amount and length of default, amount of forfeiture, reason for delay in payment, and speed in which equity is sought); 4 Powell, REAL PROPERTY § 37.21[1] at 135 ("In determining whether the attempted forfeiture should be set aside, courts consider the amount of default, the reason for the purchaser's default, the amount of money the purchaser would forfeit compared to the purchase price, and the relationship of the monthly payments to the fair rental value of the property.").