**In re Susan KINGSMORE, Debtor.**

**No. C/A 02–04789–W.**

United States Bankruptcy Court,
D. South Carolina.

Oct. 2, 2002.

**814**

Jane H. Downey, Columbia, SC, for creditor.

Jason T. Moss, Columbia, SC, for debtor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court for further hearing to consider whether Susan Kingsmore ("Debtor") possessed an equitable right of redemption associated with her two installment land contracts with Joann D. Dehardt ("Creditor") when she filed her bankruptcy Petition. On August 9, 2002, the Court entered an Order that determined that South Carolina law provides purchasers under installment land contracts, in appropriate circumstances, an equitable right of redemption, which allows them an opportunity to pay the entire purchase price of the contract before a court would enforce a contract's forfeiture provision. From the facts in the record at that time, the Court could not determine whether Debtor possessed an equitable right of redemption when she filed her bankruptcy Petition. Accordingly, the Court ordered a further hearing to consider this issue as well as whether Special Referee James Spencer Verner considered Debtor's equitable right of redemption when he canceled the two installment land contracts and any other issue that might affect confirmation of Debtor's Chapter 13 Plan.

On August 27, 2002, the Court held the further hearing at which time the parties addressed several issues. Alleging several equitable factors, Debtor argues that she held an equitable right of redemption when she filed her bankruptcy Petition and that this equitable right became part of her bankruptcy estate even though the Special Referee canceled the installment land contracts prepetition. To support this position, Debtor asserts that, at the hearing when the Special Referee canceled the contracts, Debtor was not afforded a formal opportunity to exercise her equitable right of redemption. Finally, Debtor asserts that she can treat her equitable

right of redemption in her Chapter 13 Plan and spread payments related to the contracts over the life of her Plan pursuant to 11 U.S.C. § 1325 because the terms of the contracts will expire within the Plan period.[1] In response, Creditor argues that, for a purchaser under an installment land contract to obtain an equitable right of redemption, a purchaser must make a proactive attempt to redeem the property, the seller must refuse to accept the redemption price, and other equitable circumstances must exist. According to Creditor, Debtor failed to formally offer to redeem the properties by paying the full purchase prices. In addition, Creditor avers that Debtor had an opportunity to exercise her right to redeem the properties when Creditor mailed Debtor notices of a right to cure and the Special Referee offered Debtor a chance to resolve Creditor's Complaint. Finally, Creditor argues that the recent decision by the Supreme Court of South Carolina upon which Debtor bases her argument that she has an equitable right of redemption, *Lewis v. Premium Investment Corporation*, 351 S.C. 167, 568 S.E.2d 361 (2002), does not apply to Debtor because the *Lewis* decision should be applied prospectively only. After considering the pleadings in the matter, the parties' arguments, and the evidence presented at the hearing, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7052.[2]

## FINDINGS OF FACT

1. On October 6, 1998, Debtor and Creditor entered into two installment land contracts wherein Creditor agrees to sell Debtor real property. Each contract deals with a separate parcel of land, Lot 12 and Lot 13, and each lot measures approximately one acre and is located in Newberry County, South Carolina.

2. Under the terms of the contract for the sale of Lot 12, Debtor agrees to pay Creditor $3,800.00. Debtor finances the entire purchase price from Creditor at 12% annual interest, and Debtor agrees to pay seventy-two consecutive monthly installments of $74.29 by the fifteenth day of each month beginning November 15, 1998.

3. Under the terms of the contract for the sale of Lot 13, Debtor agrees to pay Creditor $8,500.00. Debtor paid $576.40 toward the purchase price and, in the contract, she finances $7,923.60 from Creditor at 12% annual interest. Debtor agrees to pay seventy-one consecutive monthly installments of $156.40 by the first day of each month beginning November 1, 1998.

4. Both contracts provide that, upon payment of the entire purchase price and Debtor's satisfactory performance of the contracts' terms and conditions, Creditor will convey valid warranty deeds to Debtor.

5. While residing on Lot 12 and Lot 13, Debtor improved the properties by clearing and landscaping the lots and installing a septic tank. Debtor values these improvements as worth approximately $4,300.00.

6. In February 2001, Debtor attended Piedmont Technical College and was studying to earn a degree in radiology. Debtor's husband worked to this point until he was diagnosed with congestive heart

---

**1.** Further references to the Bankruptcy Code shall be by section number only.

**2.** The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and, to the extent any of the following Conclusions of Law constitute Findings of Fact, they are so adopted.

failure and informed he needed to obtain a heart transplant. Consequently, Debtor's husband could no longer work, and Debtor was unable to continue her studies because she needed to care for her ailing spouse.

7. Although Debtor's husband and Debtor's daughter received Social Security benefits as a result of Debtor's husband's heart condition, Debtor faced financial difficulties.

8. On November 7, 2001, Creditor, through her attorney, mailed correspondence to Debtor indicating that Debtor was in default of the contracts because Debtor failed to pay the 2000 property taxes and the October 2001 payments for each parcel. Creditor provided Debtor a notice of a right to cure this delinquency, which allowed Debtor an opportunity to pay $414.89 until December 7, 2001.

9. Debtor testified that she made the October 2001 payments.[3]

10. Debtor did not make the November 2001 payments on Lot 12 or Lot 13. Until this point. Debtor testified that she had not missed any payments since entering the contracts.[4]

11. Debtor did not make the December 2001 payments on Lot 12 or Lot 13.

12. On January 2, 2002, Creditor, through her attorney, mailed correspondence to Debtor indicating that Debtor was in default of the contracts because Debtor failed to pay the 2000 property taxes and the October, November, and December 2001 payments for each parcel.

13. On January 4, 2002, Debtor attempted to pay Creditor $260.69 for her November 2001 payment; however, Creditor gave Debtor's check to Creditor's attorney. Creditor did not negotiate the check that attempted to pay the November 2001 payment.

14. On January 7, 2002, Creditor filed a Lis Pendens, Summons, and Complaint against Debtor seeking the cancellation of the parties two installment land contracts and foreclosure of Debtor's interests in the properties.

15. On March 21, 2002, Special Referee James Spencer Verner considered Creditor's Complaint. The parties agree that, at the hearing, the Special Referee asked Debtor if she could make payment to Creditor to resolve Creditor's complaint. The transcript, however, does not reflect the Special Referee's making this offer to Debtor. In addition, the parties dispute the terms and conditions of the offer: Debtor claims the Special Referee allowed her a two week period to cure what was owed to Creditor, and Creditor claims the Special Referee provided Debtor a chance to redeem the properties at the hearing.

16. On March 21, 2002, the Special Referee entered an order (the "Special Referee's Order") resolving Creditor's Complaint.[5] The Special Referee ordered the cancellation of the two installment land contracts and directed the Clerk of Court for Newberry County to enter these cancellations in the record of the Clerk's Deed

---

3. Creditor agrees that Debtor made the October 2001 payments as in the Complaint she alleges that Debtor failed to make the November and December 2001 payments. According to the Complaint, Debtor made the October 2001 payments on December 7, 2001.

4. Debtor testified that she had made several payments that were late and that she paid the late penalties accordingly.

5. Although Creditor's Complaint seeks two forms of relief, the cancellation of the contracts and foreclosure, the Special Referee's Order only addresses the cancellation of the contracts and makes no reference to foreclosing Creditor's interest as a first lien on the properties.

Book. The Special Referee based his conclusion on the contracts' terms, which allow Creditor to cancel the contracts because Debtor failed to make payments.[6]

17. In the Special Referee's Order, the Special Referee concludes the total balance due and owing to Creditor on the contracts is $6,674.00 ($2,184.84 for Lot 12 and $4,489.16 for Lot 13).

18. When the contracts were canceled, Debtor had paid a total of $8,856.40 in principal and interest for the two parcels.[7]

19. On April 19, 2002, Debtor filed her Chapter 13 case.

20. In her Schedules, Debtor lists her real property as two lots located in Prosperity, South Carolina. Debtor values these lots as worth $10,000.00 and lists Creditor, her only secured creditor, with a claim totaling $6,886.32 secured by the lots.[8]

21. In her Chapter 13 Plan, Debtor proposes to pay Creditor $146.00 monthly until the balance of Creditor's lien plus 8.5% interest has been paid in full.

22. Debtor testified she believed the value of the properties is $21,000.00.

23. Creditor testified she believed the value of the properties is $22,000.00.

## CONCLUSIONS OF LAW

### I. Whether *Lewis* Applies to Debtor?

The Court begins its analysis with Creditor's argument that *Lewis* should not ap-

ply to Debtor because the decision should be applied prospectively only. In essence, Creditor argues that, because the Supreme Court's *Lewis* decision created or recognized a property right not previously existing, *Lewis* should not be given retroactive effect to Debtor's Petition date, and, consequently, Debtor could not have an equitable right of redemption that she could treat in her Chapter 13 Plan. *See, e.g. Ex parte Hardaway v. County of Lexington,* 314 S.C. 22, 443 S.E.2d 569, 571 (1994).

■ South Carolina law provides that, when a judicial decision creates a new liability where none formerly existed, courts should apply the judicial decision prospectively only. *See id.* at 570. That said, Creditor's argument fails to recognize the validity of the Court of Appeals of South Carolina's decision in *Lewis,* which held that a purchaser under an installment land contract "possessed an equitable interest in the property as well as an ancillary redemption right which could have prevented forfeiture or foreclosure." *Lewis v. Premium Investment Corp.,* 341 S.C. 539, 535 S.E.2d 139, 142 (2000), *aff'd as modified* 351 S.C. 167, 568 S.E.2d 361 (2002). The Court of Appeals decision was effective when it was entered, and a decision by an intermediate appellate court in South Carolina is the law of South Carolina unless that decision is subsequently reversed or overruled. *See Hamby v.*

---

6. The Special Referee cited language from the contracts that provides that Creditor may retain all amounts paid by Debtor as liquidated damages, re-enter the property, take exclusive possession of it, evict Debtor, and be relieved of the duty to convey the property to Debtor in the event Debtor fails to make payments after a period of thirty days since the payments are scheduled to be made.

7. Debtor made all payments under the contracts until the November 2001 payments; thus, she has made thirty-six payments of

principal and interest on Lot 12 totaling $2,664.00 and thirty-six payments on Lot 13 totaling $5,616.00. Including her down payment of $576.40 for Lot 13, Debtor has paid a total of $8,856.40 toward the purchase of these properties.

8. In her Schedules, Debtor also claims a homestead exemption on these same lots pursuant to S.C.Code Ann. 15–41–30(1) in the amount of $3,113.68.

*Hamby,* 315 S.C. 518, 445 S.E.2d 656, 657 (1994) (holding that a decision by an intermediate appellate court was applicable to a separate action filed after the entry of the decision even though the Supreme Court of South Carolina had not yet affirmed the decision). Because the intermediate appellate decision of *Lewis* recognized an equitable right of redemption and this decision represented the law of South Carolina when the Special Referee held the hearing to cancel the contracts as well as when Debtor filed her bankruptcy Petition, the Court concludes that an equitable right of redemption could be found in Debtor's estate.

■ In addition, the Court concludes that it must apply the state law as it exists when a matter or proceeding is before the Court. Accordingly, the Court believes it must consider the Supreme Court's decision in *Lewis* when determining whether Debtor has an equitable right of redemption in this case even though the decision was entered after Debtor filed her bankruptcy Petition. The Court buses this conclusion on *Barrett v. Applied Radiant Energy Corporation,* 240 F.3d 262, 269–70 (4th Cir.2001), wherein the Fourth Circuit remanded to the district court an employee's claim for assault and battery, which the district court dismissed at summary judgment. The Fourth Circuit reasoned that, after the district court's decision, the Virginia Supreme Court entered two opinions that were directly on point with the issues the employee raised in her claim and, in light of these opinions, remanded the assault and battery claim to the district court. *See id.* at 270. The Court believes the teaching from this holding is that a federal court should apply substantive state law that would presently be applied in the state court system. Based upon this principle, the Court concludes that it should consider *Lewis* as it is the most recent decision entered by the Supreme Court of South Carolina on the issue of installment land contracts and the equitable right of redemption.

## II. Whether Debtor Must Formally Initiate an Offer to Pay the Redemption Price as a Prerequisite to Obtaining an Equitable Right of Redemption?

■ Creditor argues that, for an equitable right of redemption to exist under an installment land contract, a purchaser must formally offer to pay the redemption price, the seller must refuse to accept the redemption price, and a host of equitable factors must indicate that an equitable right to redeem is appropriate under the circumstances. In other words, for a purchaser under these types of contracts to have an equitable right of redemption, the purchaser must assert the right as a condition of obtaining it.

The summation of *Lewis's* holding is that courts of equity can relieve defaulting purchasers from a strict forfeiture provision of an installment land contract and provide purchasers the opportunity for redemption "when equity so demands." *Lewis,* 568 S.E.2d at 364. The court reasons that parties can contract for an amount of liquidated damages; however, when the stipulated sum is disproportionate to any probable damage resulting from a breach of contract, the stipulation is an unenforceable penalty. *See id.* at 363–64. Applying this principle to the context of installment land contracts, the court concludes that enforcing a forfeiture provision in an installment land contract can, in particular circumstances, constitute a penalty. As a result, the court rules, "In those circumstances ... where a stipulated sum amounts to a penalty, we conclude it would be inequitable to enforce the forfeiture provision without first allowing the purchaser an opportunity to redeem the in-

stallment contract by paying the entire purchase price." *Id.* at 364–65. The Court then footnotes a list of nine factors to consider when determining whether redemption is equitable under the circumstances. *See id.*, at 365, fn. 5 ("A variety of case-specific factors should be considered to determine if redemption is equitable under the circumstances."). These factors include the following: (1) the amount of the purchaser's equity, (2) the length of the default period, (3) the number of defaults, (4) the reason for the delay in payment, (5) the speed in which equity is sought, (6) the value of improvements to the property, (7) the amount of money forfeited compared to the purchase price, (8) the adequacy of the property's maintenance, and (9) the relationship of monthly payments to the fair rental value of the property. *See id.*

Based upon its interpretation of *Lewis*, the Court disagrees with Creditor's argument that a purchaser under an installment land contract must assert an equitable right of redemption by attempting to pay the redemption amount as a condition of obtaining the right. Instead, the Court believes a plain reading of *Lewis* imposes no such condition upon purchasers. Although the facts of *Lewis* indicate the purchaser attempted to redeem the property after a period of default, the holding of the case does not indicate that an attempt to pay the redemption amount is required in order for purchasers to obtain an equitable right of redemption. Rather, it appears that the equitable right of redemption exists when equity dictates it based upon the presence of some or all of the factors listed in *Lewis*.[9]

## III. Is the Equitable Right of Redemption Extinguished by the Notice to Cure or an Informal Opportunity to Redeem?

Creditor argues that, even if the Court concludes that an equitable right of redemption exists in this case, Creditor provided Debtor opportunities to cure her delinquency and that these opportunities are equivalent to affording Debtor a chance to exercise her equitable right of redemption. Specifically, Creditor argues that she provided Debtor with a notice of a right to cure her delinquencies on the two properties as evidenced by correspondence from her counsel to Debtor dated November 7, 2001. Moreover, Creditor alleges Special Referee Verner informally offered Debtor an opportunity to redeem the properties by paying Creditor at the hearing held to consider Creditor's Complaint to cancel the two installment land contracts and to foreclose Creditor's liens on the properties.

South Carolina law provides that, with respect to a secured or unsecured credit transaction payable in two or more installments, a creditor may give a debtor notice of a right to cure after the debtor has been in default for ten days for failing to make a required payment and after the debtor has not voluntarily surrendered the collateral. *See* S.C.Code Ann. § 37–5–110(1) (Law.Co-op.2002). The right to cure permits debtors to cure all defaults by tendering within the cure period the amount of all unpaid sums due plus any delinquency charges without acceleration. *See* S.C.Code Ann. § 37–5–111(1) (Law.Co-op.2002).

The Court believes that a right to cure under state law is different from an equitable right of redemption. A right to cure allows debtors an opportunity to cure or "catch up" a delinquency. The statute

9. Whether Debtor formally offers to pay the purchase price before a seller obtains a termination of the contract may be an additional factor for courts to consider in balancing the equities between the parties.

clearly provides that the cure is not designed to be an all-encompassing payoff of the entire debt; instead, it is only the cure of a delinquency amount. In contrast, a right of redemption is an opportunity to pay the entire debt in full to avoid a forfeiture. *See Lewis,* 568 S.E.2d at 364–65. Because these two concepts deal with two different types of rights, one statutory and the other equitable, that may arise at different points in the collection process, the Court concludes that Creditor's notice of Debtor's right to cure and Debtor's failure to cure within the prescribed period does not extinguish Debtor's equitable right of redemption.[10]

■ The Court also finds that Debtor's equitable right of redemption was not extinguished by the Special Referee's informal offer to Debtor to cure the delinquencies under the contracts. The parties agree that the Special Referee asked Debtor what she could pay Creditor to resolve Creditor's Complaint. The parties, however, dispute what the terms of the Special Referee's offer were, including the terms of the payment and a period for making the payment. Further, the transcript of the March 21, 2002 hearing does not reference these terms or even that the Special Referee offered Debtor an opportunity to pay Creditor. Because there is no clear indication of what the Special Referee offered Debtor, the Court does not believe that the allegations of an informal offer to resolve a complaint are sufficient to establish that the Special Referee considered any equitable right of redemption that Debtor might have had or that the Special Referee extinguished this right. Moreover, the Special Referee's

Order that cancels the installment land contracts does not mention a right of redemption, and there is no language in the Order that leads this Court to conclude that the right has been extinguished, barred, or foreclosed.

## IV. Whether an Equitable Right of Redemption Existed when Debtor Filed her Bankruptcy Petition?

■ As this Court previously mentioned, an equitable right of redemption exists if redemption is equitable under the circumstances, and certain factors indicate equitable circumstances. *See id.* at 364–65, fn. 5. These factors include the following: (1) the amount of the purchaser's equity, (2) the length of the default period, (3) the number of defaults, (4) the reason for the delay in payment, (5) the speed in which equity is sought, (6) the value of improvements to the property, (7) the amount of money forfeited compared to the purchase price, (8) the adequacy of the property's maintenance, and (9) the relationship of monthly payments to the fair rental value of the property. *See id.* at 365, fn. 5.

Applying these factors to the facts of the case at bar, the Court concludes that Debtor held an equitable right to redeem when she filed her bankruptcy Petition. Regarding the first factor, Debtor has a substantial amount of equity in the properties. The parties agree that the two parcels in question are worth between $21,000.00 and $22,000.00. The total amount of principal and interest Debtor owes on these parcels

---

**10.** Indeed, the right to cure can arise at any time during the contractual relationship whenever there is a default, but the right of redemption is triggered when a creditor attempts to end the contractual relationship by foreclosure or forfeiture. The right of redemption arises out of equity and is the debtor's last chance to save the property. The right to cure is a statutory means to "catch up" a delinquency and to continue performing under the contract.

is $6,674.00,[11] and splitting the difference of parties' estimates and valuing the properties as worth $21,500.00, the Court concludes Debtor has approximately $15,000.00 in equity in the properties. This significant amount of equity suggests that Debtor should have an equitable right to redeem and that Debtor would suffer a penalty in this instance if the equity were forfeited.

Other factors indicate that an equitable right of redemption should be found in this case as well. For example, although Debtor admitted to having a history of making late payments, she missed only two payments when Creditor filed her Complaint seeking the cancellation of the contracts. Further, Debtor attempted to make her November payment in January 2002; however, Creditor refused to accept and negotiate Debtor's check. In addition, Debtor's delay in making payments appears due to her husband suffering from a serious medical condition, and, as a result of this condition, Debtor's husband has had to stop working, Debtor has had to cease her efforts to obtain a degree in radiology, and Debtor has had to start working. Debtor has also sought equity expeditiously as, on April 19, 2002 and approximately one month after the Special Referee's Order, she filed her bankruptcy Petition and Chapter 13 Plan wherein she attempts to exercise her equitable right of redemption. Finally, Debtor improved the property by clearing and landscaping the lots and installing a septic tank at a cost of $4,300.00. Weighing these factors, this Court concludes that the equities in this case require a recognition of Debtor's equitable right of redemption.

**11.** Under the contracts, Debtor owes $2,184.84 in principal and interest for Lot 12

## V. How is Debtor's Property Interest to be Treated in her Chapter 13 Plan?

■ Initially, Debtor asserts that the installment land contracts in this case should be considered sale and mortgage transactions, and, as a result, Debtor can restructure the indebtedness to Creditor in her Chapter 13 Plan pursuant to §§ 1322(c)(2) and 1325(a)(5). Resolving this issue depends upon state law and a review of these particular contracts. *See Kane v. Inhabitants of Town of Harpswell,* 248 B.R. 216, 222 (1st Cir. BAP 2000) (citing *In re Nejberger,* 934 F.2d 1300, 1302 (3d Cir.1991)) ("State laws stake out the dimensions of a debtor's interest in property."). If state law considers an installment land contract as essentially a sale and financing device and therefore purchasers under these contracts have an equitable ownership interest, then purchaser-debtors can treat these contracts as secured claims in their Chapter 13 plans. *See* 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 176.1 (3d ed.2000) (citing *In re Belmonte,* 240 B.R. 843 (Bankr.E.D.Pa. 1999), *rev'd on other grounds Belmonte v. Belmonte (In re Belmonte),* 279 B.R. 812 (E.D.Pa.2001); *In re Groff,* 223 B.R. 697 (Bankr.S.D.Ill.1998); *In re Molitor,* 133 B.R. 1020 (Bankr.D.N.D.1991); *In re Cooper,* 98 B.R. 294 (Bankr.W.D.Mich.1989)). However, if state law treats an installment land contract as executory, then the Bankruptcy Code mandates that the purchaser-debtor must either assume or reject the contract. *See* § 365. If the purchaser-debtor decides to assume the contract, he or she must cure any default or provide adequate assurance that any default will be promptly cured, compensate the party to the contract for any actual pecuniary loss resulting from the default under the

and $4,489.16 for Lot 13.

contract, and provide adequate assurance of future performance. *See* § 365(b)(1). In other words, if the contract is executory, the purchaser-debtor will have to cure its default promptly rather than stretching it over the span of a Chapter 13 plan. *See* 3 Lundin at § 176.1.

South Carolina law is checkered in its treatment of a purchaser's interest under an installment land contract. Indeed, one line of cases could be construed to suggest that a purchaser under an installment land contract has an equitable ownership in the property. In *Dempsey v. Huskey*, the Supreme Court of South Carolina noted that, in the context of an installment land contract, the purchaser has "equitable title" to the property and the vendor-seller retains "legal title." *See* 224 S.C. 536, 80 S.E.2d 119, 121 (1954); *see also FCX, Inc. v. Long Meadow Farms, Inc.*, 269 S.C. 202, 237 S.E.2d 50, 52 (1977) (treating a purchaser's interest under an installment land contract as an equitable interest). Further, the *Dempsey* Court compares the parties in an installment land contract to those in a mortgage. *See* 80 S.E.2d at 121 (comparing a vendor-seller to a mortgagee and the purchaser to a mortgagor). The suggestion that equitable ownership exists for purchasers under these contracts is strengthened when the court notes that, when the purchaser informed the vendor-seller of her intent not to perform under the parties' installment land contract, "the vendor became vested with such a right to bring an action and to proceed as in a foreclosure," indicating that the proper way to cancel a purchaser's interest in an installment land contract is to foreclose it. *Id.* However, as this Court previously noted, *Dempsey* does not definitively announce that a vendor-seller must foreclose a purchaser's interest in real property under an installment land contract, nor does the opinion hold that the contract is substantively the same as a mortgage. *See In re Jones*, 118 B.R. 395, 396 (Bankr.D.S.C. 1989).

The tenor of hinting that an installment land contract is an equitable mortgage continued as the Court of Appeals of South Carolina twice suggested that parties canceling a bond for title, similar to an installment land contract, might need to pursue foreclosure proceedings to terminate a purchaser's equitable ownership interest rather than merely canceling the instrument. In both cases, though, the court did not decide the issue of whether a bond for title created an equitable mortgage; instead, it merely mentioned that it was a possible issue that the parties did not address. *See Wilder Corp. v. Wilke*, 324 S.C. 570, 479 S.E.2d 510, 513 fn. 1 (1996) (noting that, for purposes of determining whether an action to foreclose on a bond for title was in law or equity, the parties did not raise the issue of whether a purchaser under a bond for title had an equitable mortgage subject to foreclosure or whether the vendor-seller could simply sue to cancel the bond); *Smith Companies of Greenville, Inc. v. Hayes*, 311 S.C. 358, 428 S.E.2d 900, 902 fn. 2 (S.C.Ct.App.1993) (denying a purchaser's motion to reconsider a judgment canceling a bond for title and noting that, although a subsequent judgment against the purchaser by the seller for the note the purchaser executed simultaneously for the purchase of the property raised the question of whether the master should have foreclosed the property rather than only canceling the bond for title, the purchaser suffered no prejudice)

In contrast, other decisions indicate that an installment land contract is executory. The seminal case in South Carolina for this proposition holds that a sale of lands cannot be regarded as completed until the purchaser has paid the total money for the property and the seller has conveyed the

land. *See Herbemont v. Sharp*, 1822 WL 678, at *1 (S.C.Const.App.). Accordingly, several decisions in South Carolina have treated an installment land contract as executory. *See Stephens v. Jenkins*, 312 S.C. 233, 439 S.E.2d 849, 850 (1994) (finding that a contract wherein the purchaser would not receive a deed until he made all payments was an "executory contract for the sale of land"); *Epps v. McCallum Realty Co.*, 139 S.C. 481, 138 S.E. 297, 305–06 (1927) (treating an instrument wherein the purchaser did not pay the entire purchase price, did not receive a deed or title, and took immediate possession as an executory contract); *Blackwell v. Ryan*, 21 S.C. 112, 1884 WL 4562, at *6 (S.C.) (noting that, where a purchaser agreed to pay a certain amount of purchase money and the seller agreed to transfer title once the purchase money was paid, the contract embodied mutual covenants thereby making it an executory contract); *Southern Pole Buildings, Inc. v. Williams*, 289 S.C. 521, 347 S.E.2d 121, 122 (1986) (treating an installment land contract as "an executory contract of sale"). Buttressing the principle that these contracts are executory is a recent decision by the South Carolina Court of Appeals that affirmed a master-in-equity's decision denying a purchaser's motion to reconsider a judgment wherein the master canceled the parties' bond for title instead of foreclosing it. *See Smith Companies*, 428 S.E.2d at 902. Merely canceling one of these contracts instead of foreclosing any interest arising from the contract suggests that these contracts

should be interpreted according to their terms and that no equitable ownership interest or mortgage is created that must be foreclosed.[12]

Recently, the appellate courts of South Carolina addressed the issue of purchasers' rights under an installment land contract. The Court of Appeals considered a case where a master-in-equity held that a purchaser under an installment land contract had no equitable interest as a result of the contract and, accordingly, the seller was not required to bring a foreclosure action to terminate the contract or the purchaser's interests arising from it. *See Lewis*, 535 S.E.2d at 140. In examining the issue, the court reversed the lower court's order and held that the purchaser in an installment land contract "possessed an equitable interest in the property [subject to the contract] *as well as an ancillary redemption right* which could have prevented forfeiture or foreclosure." *Id.* at 142 (emphasis added). The specific language of the holding indicates a finding that a purchaser under an installment land contract has an equitable interest in property that is separate from a redemption right. Because the purchaser had not been provided an opportunity to exercise his redemption right, the court remanded the matter to the lower court to consider the seller's right to seek a forfeiture or foreclosure subject to the purchaser's right of redemption. The court seemed to reach its conclusion for three reasons. First, the court cited South Carolina law recognizing

---

12. In contrast, another case reaches the opposite result and suggests that installment land contracts cannot be interpreted strictly. *See Elliott v. Snyder*, 246 S.C. 186, 143 S.E.2d 374 (1965). In *Elliott*, the seller brought an action to rescind and cancel an installment land contract because purchaser's check for the monthly installment was returned to the seller marked "drawn against uncollected funds." Upon receipt of the check as "drawn against uncollected funds," the seller considered the contract void; however, the Court disagreed and found that the purchaser substantially complied with the terms of the contract to prevent a forfeiture as the purchaser made the payment timely and there were sufficient funds in the bank to pay the check for six months after the seller attempted to negotiate it.

that purchasers in installment land contracts obtain an equitable interest upon entering into a contract for a sale of land.[13] *See id.* at 141. Next, the court then noted that no decision had addressed the measures necessary to divest a purchaser of this equitable interest. *See id.* at 141, fn. 1 (indicating that, although forfeitures are not favored, they are a remedy available to vendor-sellers under an installment land contract (citing *Elliott,* 246 S.C. 186, 143 S.E.2d 374, *First Trust & Sav. Bank of Rock Hill v. Pruitt,* 121 S.C. 484, 113 S.E. 469 (1922))). The Court then cited a North Carolina decision for the proposition that, while vendor-sellers can pursue a variety of remedies (including forfeiture) in the event the purchaser defaults under installment land contracts, purchasers have the right to redeem their interests under their installment land contracts to prevent a forfeiture. *See Lewis,* 535 S.E.2d at 142 (citing *Lamberth v. McDaniel,* 131 N.C.App. 319, 506 S.E.2d 295, 296 (1998)). In addition, the court noted that *Lamberth* indicated that the right of redemption could not be waived by contract at the time of the agreement.

The Supreme Court of South Carolina granted certiorari in *Lewis* on February 21, 2001 and recently entered its opinion on August 5, 2002. *See Lewis,* 568 S.E.2d 361. The Supreme Court defined the issue before it as whether the Court of Appeals erred by declining to apply the forfeiture provision of the installment land contract by determining that the purchaser had an equitable interest in the property that included a right of redemption upon default.

*See id.,* at 362–63. With this issue as its focus, the court *affirmed and modified* the Court of Appeals's decision. The court held that courts of equity can relieve a defaulting purchaser from a strict forfeiture provision in an installment land contract and provide the opportunity for redemption when equity so demands. *See id.* at 364–65. The court reached its conclusion by defining installment land contracts and distinguishing them from mortgages. *See id.* at 363–64. Next, the court treated the issue before it as one of general contract law rather than the law of mortgages. *See id.* Applying the principle that a court cannot enforce a provision that operates as a penalty in the context of installment land contracts, the court found that, where a forfeiture provision amounts to a penalty, "it would be inequitable to enforce the forfeiture provision without first allowing the purchaser an opportunity to redeem the installment contract by paying the entire purchase price." *Id.* at 364–65. The Court then noted that is has long analogized the relationship between parties in an installment land contract to those in a mortgage and concluded that, in appropriate circumstances, purchasers under installment land contracts should be provided an equitable right of redemption that is similar to a mortgagor's common-law right of redemption. *See id.* at 364–65.

From its review of the Supreme Court's *Lewis* decision, this Court concludes that the Supreme Court did not equate an installment land contract with an equitable

---

**13.** Specifically, the court cited *Dempsey,* 80 S.E.2d 119 for the proposition that, although sellers may retain title, purchasers obtain an equitable interest in the property by virtue of entering into a contract for the sale of land. The court then distinguished *Davis v. Monteith,* 289 S.C. 176, 345 S.E.2d 724 (1986), where the court found a purchaser had no equitable interest in real property because the purchaser did not enter into a long-term installment land contract and did not pay a substantial portion of the purchase price over a number of years. The court then cited *Southern Pole Buildings,* 289 S.C. 521, 347 S.E.2d 121 and concluded that the case recognized that a purchaser under an installment land contract held an equitable interest in the property subject to the contract.

mortgage. Instead, the court recognized a right of redemption only when equity demands it and seemingly distanced itself from the Court of Appeals's general finding of a broader equitable interest for purchasers under installment land contracts. While the Court of Appeals's reference to an "equitable interest" could be construed to be akin to an equitable mortgage, the Supreme Court does not include the "equitable interest" language in its decision. Indeed, the Supreme Court never expressly indicates that an installment land contract is to be generally viewed as an equitable mortgage. In addition, the Supreme Court repeatedly distinguishes installment land contracts from mortgages.[14] Finally, the Supreme Court also distinguishes the right of redemption, which springs from an installment land contract, from an equitable estate that may arise under equitable conversion. *See id.* at 364–65, fn. 4 (citing *Brooks v. Council of Co–Owners of Stones Throw Horizontal P'pty Regime I*, 315 S.C. 474, 445 S.E.2d 630 (1994)). While the Supreme Court did again analogize mortgages and installment land contracts, the tenor of its decision, by modifying the Court of Appeals opinion, by relying on general contract law instead of mortgage law, by specifically reviewing the differences between mortgages and installment land contracts, and by limiting the right of redemption associated with installment land contracts to instances only where equity demands it, maintains a dis-

tinction between equitable mortgages and installment land contracts and does not equate the two legally. Moreover, the Supreme Court cited the *Brooks* decision for the proposition that parties to an installment land contract can specifically agree to terms that prohibit the equitable conversion of an installment land contract into equitable ownership and a mortgage.[15] For these reasons this Court concludes that the state law of South Carolina continues to treat installment land contracts as executory and generally distinct from equitable mortgages.

With the context that state law generally considers installment land contracts as executory, the Court next considers whether the contracts at issue in this case are executory. The contracts provide continuing mutual duties on both parties as Debtor must pay the entire purchase price through monthly installments before Creditor will convey deeds to the subject properties. In addition, the contracts provide other continuing duties including that Debtor must obtain written permission from Creditor before performing any construction on the properties. The contracts also indicate that, if a mechanic's lien is filed or a judgment is recorded against the properties as a result of Debtor's actions, Creditor has the right to terminate the contracts. Although the contracts are not clear as the one in *Brooks,* which expressly stated that it was executory and that no equitable interest was created, the con-

---

**14.** In its discussion of installment land contracts, the court contrasted these contracts with mortgages and noted that these contracts, while offering purchasers some benefits such as immediate possession and easier credit requirements, do not contain the same protections for purchasers a mortgage has. *See Lewis,* 568 S.E.2d at 363–64.

**15.** Equitable conversion provides that under an executory contract for the sale of real estate, the equitable estate passes to the purchaser and the bare legal title for security

purposes remains in the vendor-seller. *See Brooks,* 445 S.E.2d at 632. The contract at issue in *Brooks* contained a provision wherein the parties agree that the installment land contract is intended to be an executory contract for the sale of real estate and that the agreement should not be construed as passing ownership, title, or interest, either legal or equitable, until title is delivered after the purchaser pays the entire purchase price. *See Brooks,* 445 S.E.2d at 631.

tracts provide that Creditor can retain all amounts Debtor previously paid as liquidated damages. *Cf. Brooks*, 445 S.E.2d at 632. According to *Lewis*, this liquidated damages provision indicates that Debtor might be prevented from claiming an equitable estate in the property due to past payments but that the liquidated damages provision does not defeat her equitable right of redemption. *See Lewis*, 568 S.E.2d 361, at 364, fn. 4. For all of these reasons, the Court concludes that the subject contracts are executory and should be treated as such in this bankruptcy case.

Finally, the Court concludes its analysis by pointing out that sound policy supports treating installment land contracts as executory in a subsequent bankruptcy case when debtors assert an equitable right of redemption to argue that the contracts were not terminated prepetition. An equitable right of redemption provides purchasers one last chance to avoid forfeiture and retain their contractual rights. It would not be fair to allow debtors to use such an equitable right as a tool to convert the transaction from one where a transfer of title is conditioned to one where debtors assert a present ownership right in the property. In addition, the Court believes it would be inequitable to allow debtors to treat such an equitable right in bankruptcy as tantamount to a right to purchase under which they could extend the time for performance under the contract or alter critical terms of the contract such as the interest rate or payment amount due the seller. Indeed, a potential for abuse exists as

purchasers under an executory contract could deliberately seek to invoke the right of redemption for the purpose of avoiding the requirements of § 365 and the unfavorable conditions of the contract while still seeking all of its benefits. Such abuse would contrast the good faith requirement that is imposed upon Chapter 13 debtors. Accordingly, this Court believes that the proper way for debtors to exercise an equitable right of redemption in a bankruptcy case in this District is to treat it as a property right which has precluded the prepetition cancellation of the executory contract and therefore provides them an opportunity to assume or reject the unterminated executory contract. This opportunity to assume or reject the contract, however, is conditioned upon the fact that the equitable right to redeem has not already been extinguished by a prior proceeding.[16]

Because the contracts in this case remain executory and have not been properly terminated prepetition, the Court concludes that the Bankruptcy Code mandates that Debtor must either accept or reject them pursuant to § 365. As state law indicates, this Court holds that these contracts are not equitable mortgages and therefore, Debtor cannot treat them like mortgages in her Chapter 13 Plan. Debtor shall amend her Plan within ten (10) days of this Order.

## CONCLUSION

From the arguments discussed above, it is therefore

---

**16.** If the Court were to recognize an equitable right of redemption as replacing a debtor's obligations and rights under the executory installment land contract for purposes of a Chapter 13 plan, a balancing of equities may require a debtor to pay the redemption price in a lump sum before allowing a debtor to assert ownership rights over the property. Treating the relationship between debtor and creditor as an unterminated executory con-

tract returns the parties to the same position they were in immediately before the state court's ruling that the contract was canceled, which, in this Court's view, was the intention of the court in *Lewis*. See also *In re Brown*, 249 B.R. 193, 196 (Bankr.N.D.Ill.2000) (noting that curing a default has the effect of restoring the situation that existed prior to default and allowing the debtor to continue making the required installment payments).

**ORDERED** that at the time of the filing of her bankruptcy petition, Debtor retained an equitable right of redemption that prevented the prepetition termination of her executory installment land contracts. Debtor may address the indebtedness to Creditor by electing to assume or reject her executory installment land contracts pursuant to 11 U.S.C. § 365.

**AND IT IS SO ORDERED.**