**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Christ Fellowship Church, d/b/a a Church in St. Stephen, South Carolina, Respondent,

v.

William H. Johnson and Dustin Kyle Johnson, Appellants.

Appellate Case No. 2024-000009

———————

Appeal From Berkeley County
Dale Edward Van Slambrook, Master-in-Equity

———————

Unpublished Opinion No. 2025-UP-414
Heard November 4, 2025 – Filed December 17, 2025

———————

**AFFIRMED**

———————

Roman Vincent Hammes and Christian Tyler Wall, both of Charpia & Hammes, Attorneys at Law, of Summerville, for Appellants.

Brooks Roberts Fudenberg, of Law Office of Brooks R. Fudenberg, LLC, of Charleston, for Respondent.

———————

**PER CURIAM:** Christ Fellowship Church (the Church) entered into a contract (the Contract) with William "Lucky" Johnson regarding a piece of land and

building (the Property) owned by Lucky.  The Church filed an action against Lucky and his son, Dustin Kyle Johnson, (collectively, the Johnsons) seeking specific performance of the Contract and title to the Property.  The Master-in-Equity found in favor of the Church, allowing the Church the opportunity to equitably redeem the Property by paying the outstanding balance to the Johnsons and requiring the Johnsons to convey title to the Property if redeemed.  On appeal, the Johnsons argue the Master-in-Equity erred by (1) finding the Contract was an installment land contract and not a lease with an option to purchase; (2) holding the option cancellation provision was an unenforceable penalty; (3) finding the sales price of the Property was $250,000 instead of $500,000; and (4) denying reimbursements for insurance premiums paid by Lucky.  We affirm.

1.  We hold the Contract is an installment land contract.  First, we find the Contract is ambiguous.  *See Richards v. Spicer*, 445 S.C. 514, 523, 915 S.E.2d 486, 491 (2025) ("Whether the language of a contract is ambiguous is a question of law, which this [c]ourt reviews de novo.").  As the Master noted, the contract was "inartfully drawn" and "easily subject to misinterpretation and misunderstanding."[1]  *See Canal Ins. Co. v. Nat'l House Movers, LLC*, 414 S.C. 255, 260-61, 777 S.E.2d 418, 421 (Ct. App. 2015) ("A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business." (alteration in original) (quoting *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct. App. 1997));  *Wallace v. Day*, 390 S.C. 69, 75, 700 S.E.2d 446, 449 (Ct. App. 2010) ("The issue of a contract's interpretation necessarily subsumes the primary question of whether the contract's language is clear or ambiguous . . . .").  We acknowledge the Contract is titled "RENT WITH DELAYED OPTION TO BUY" and a few paragraphs refer to the Contract as a "Rental Agreement" or a "Rental Contract."  However, we agree with the Master's finding that the "essence" of the Contract is a sales contract.  The Contract (1) uses the terms "Seller" and "Purchaser"; (2) provides a "sales price"; (3) requires the Church to submit a down payment; (4) provides a property description; (5) states the Church "purchased [the Property] as is"; (6) states one party "agrees to sell" and the other "agrees to buy"; (7)

---

[1] We note that the Master did not explicitly address the issue of ambiguity; however, we interpret these statements as a finding that the Contract was ambiguous.  Further, we note that the Johnsons conceded that it was ambiguous at oral argument.

enumerates the "unpaid balance"; (8) requires the Church to pay a final balloon payment; (9) requires the Church to pay property taxes; and (10) describes Lucky as the "Seller" under his signature and the Church as the "Buyer." The Contract also provides the Johnsons could cancel the Contract if the Church was delinquent in payments over ninety days, and if the Church defaulted, all previous payments would be considered *rent* payments. Further, the Contract does not provide a rental term or a rental payment. Therefore, even though the Contract is titled as a rental agreement, the scope and effect of the language used proves the parties intended the Contract to be a sales contract. *See S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 303 (2001) ("Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties."); *id.* ("The determination of the parties' intent is then a question of fact."); *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 502 (Ct. App. 2007) ("The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof."); *Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 147, 538 S.E.2d 672, 675 (Ct. App. 2000) ("The primary test as to the character of a contract is the intention of the parties, such intention to be gathered from the whole scope and effect of the language used.").

The Johnsons also argue the Master "relied on" *Lewis*[2] to determine the Contract was an installment land contract. This is an inaccurate reading of the order. The Master cited to *Lewis* to explain the Church had an equitable right of redemption and the Master could relieve the Church from automatic forfeiture. Regardless, we find *Lewis* is relevant to the issue of the type of contract involved in this case. In talking about installment contracts, our supreme court in *Lewis* listed some of the typical characteristics found in those types of contracts: (1) the buyer gets immediate possession; (2) the seller retains title until paid in full; and (3) the contract contains a forfeiture clause, which enables the seller to terminate the contract, recover the property, and retain the installment payments if the buyer defaults. 351 S.C. at 170-71, 568 S.E.2d at 363 (quoting 15 Richard R. Powell, Real Property § 84D.01, at 3 (2000)). These characteristics are contained in the Contract.

Accordingly, we believe the Master properly found the Contract was a land installment contract. *See Cook v. State Farm Auto. Ins. Co.*, 376 S.C. 426, 429, 656 S.E.2d 784, 786 (Ct. App. 2008) ("Our scope of review for a case heard by a master-in-equity who enters a final judgment is the same as that for review of a

---

[2] *Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 568 S.E.2d 361 (2002).

case heard by a circuit court without a jury."); *id.* ("Therefore, we may not disturb the master's findings of fact unless those findings are 'wholly unsupported by the evidence or controlled by an erroneous conception or application of the law.'" (quoting *Auto Owners Ins. Co. v. Langford*, 330 S.C. 578, 581, 500 S.E.2d 496, 498 (Ct. App. 1998))).

2. We hold the Master did not err in granting the Church the right of redemption because it would be inequitable not to relieve it from the strict forfeiture provision under the circumstances. *See Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 248, 715 S.E.2d 348, 352 (Ct. App. 2011) ("We review factual findings and legal conclusions in an equitable action de novo."); *Lewis*, 351 S.C. at 172, 568 S.E.2d at 363 ("Parties to a contract may stipulate as to the amount of liquidated damages owed in the event of nonperformance."); *id.* ("Where, however, the sum stipulated is plainly disproportionate to any probable damage resulting from breach of contract, the stipulation is an unenforceable penalty."); *id.* at 173-74, 568 S.E.2d at 364 (holding "courts of equity can relieve a defaulting purchaser from the strict forfeiture provision in an installment land contract and provide the opportunity for redemption when equity so demands"); *Cody Disc., Inc. v. Merritt*, 368 S.C. 570, 575-76, 629 S.E.2d 697, 700 (Ct. App. 2006) (holding the Master erred in enforcing a forfeiture provision in an installment contract and failing to grant the purchaser the right to redeem). Here, the Contract states if the Church became delinquent in payments, the Johnsons could cancel the Contract and keep the previous payments as rent monies. Ultimately, this stipulation produces a "win-win" situation for the Johnsons: if the Church defaulted, they would still retain title to the Property, benefit from the repairs the Church had made to the Property,[3] and pocket the money the Church had paid. On the other hand, the Church would lose the money paid to the Johnsons and would have no equity in the Property.

Further, the *Lewis* court provided factors to consider in determining whether redemption is equitable. *See Lewis*, 351 S.C. at 174 n.5, 568 S.E.2d at 364 n.5. (indicating we should consider (1) the amount of the purchaser's equity, (2) the length of the default period, (3) the number of defaults, (4) the value of improvements to the property, (5) the amount of money forfeited compared to the

---

[3] We acknowledge the Contract does not require the Church to make renovations to the Property; however, it appears the Property was an uninhabitable building and the Church intended to use the Property for worship services. Additionally, Lucky admitted he was aware that the members of the Church intended to renovate the Property.

purchase price, (6) the reason for delay in payment, (7) the adequacy of the property's maintenance, (8) the speed in which equity is sought, and (9) the relationship of monthly payments to the fair rental value of the property (citations omitted)). Here, the Church would have no equity in the Property because the Contract was cancelled once the Church defaulted. Although Evon Brown, the Church Secretary, testified the Church spent around $54,000 for improvements to the Property, it appears that was only the amount spent on materials and payments to contractors. William Middleton, a Deacon of the Church, testified the amount spent on repairs was much more than that and labor costs were even more. He testified the members of the Church remodeled the entire inside of the building—adding significant value to a building previously used as a warehouse.

Next, the Church would forfeit $154,900[4]—over half of the sales price. Additionally, Brown testified the reason the Church was unable to make the balloon payment was because the bank would not provide them with a loan, likely because they did not have title to the Property. However, the Church was still making monthly payments to Lucky through September 2021—almost four years after the default. Finally, although it is not clear what the fair rental value of the Property is, Lucky testified he purchased the Property for $12,000 in 1998. The Church paid Lucky a down payment of $12,500. Thus, Lucky immediately regained all money he spent to purchase the Property. Further, the equitable solution is to affirm the Master's decision to grant the Church the right to redeem the Property. *See id.* at 172, 568 S.E.2d at 363 ("Equity does not favor forfeitures or penalties and will relieve against them when practicable in the interest of justice." (quoting *Lane v. N.Y. Life Ins. Co.*, 147 S.C. 333, 374, 145 S.E. 196, 209 (1928))). Therefore, we hold the Master properly allowed the Church the right of redemption.[5]

3. The Johnsons argue the Master erred in finding the sales price was $250,000. We find the Johnsons failed to preserve this issue for our review. *See Wilder Corp.*

---

[4] At the time of default, the Church had paid $154,900 to the Johnsons. The Contract states a default would occur ninety days after failing to make a payment. The balloon payment was due on October 1, 2017; therefore, the default would have occurred on December 30. The Church paid $150,100 to Lucky by October 1. According to the Church's records, the Church made three payments of $1,600 between October 1 and December 30, bringing the total to $154,900.
[5] Although the Church had only paid $154,900 at the time of default, the evidence established that it had paid $232,745 at the time trial began. Therefore, the Master correctly determined the "redemption amount."

*v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review."). The Contract states the sales price was $500,000, "which is inclusive of a tax deductible donation of [$250,000]" to be deducted in $50,000 increments every year for five years. The order indicated the sales price was $250,000. However, the Johnsons did not file a motion to reconsider to allow the Master to correct his error. Therefore, we cannot review this issue on appeal.

Even if the issue was preserved, both parties provided testimony that the Church was only required to actually pay $250,000 for the Property. Lucky testified if all payments were made by October 1, he would have had to sign over the Property. Brown testified that after having paid the $12,500 down payment, the remaining balance was $237,500. The Contract required the Church to make a down payment of $12,500, followed by monthly payments towards the unpaid balance of $237,500. Accordingly, even if the Johnsons had properly preserved this issue by filing a motion to reconsider, we hold the Master's error was harmless. *See Jensen v. Conrad*, 292 S.C. 169, 172, 355 S.E.2d 291, 293 (Ct. App. 1987) (finding "[a] judgment will not be reversed for insubstantial errors not affecting the result").

4. The Johnsons argue the Church failed to obtain fire and hazard insurance on the Property as required by the Contract, which resulted in Lucky having to pay $3,200 per year for insurance for eleven years. They argue the Master erred by failing to require the Church to reimburse Lucky for the cost of insurance. We hold this issue is abandoned. In their brief, the Johnsons do not cite to any legal authority to support their argument and only cite to the record on appeal once. *See Equivest Fin., LLC v. Ravenel*, 422 S.C. 499, 506, 812 S.E.2d 438, 441 (Ct. App. 2018) ("When a party provides no legal authority regarding a particular argument, the argument is abandoned and the court will not address the merits of the issue."). Further, the single paragraph arguing this issue contains mostly conclusory statements. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review."). Therefore, we find this argument is abandoned.

**AFFIRMED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**