## 12169

### FIRST NAT. BANK OF SPRINGFIELD v. HUTSON *ET AL.*

(140 S. E., 596)

1. Wills—Intention of Testator as Gathered from Will Prevails, Unless it Conflicts with Rule of Law.—In construction of a will, intention of testator as gathered from instrument prevails, unless intention conflicts with settled rule of law.

2. Wills—In Ascertaining Intention, Will Must be Taken as a Whole and Every Part Given Effect.—In ascertaining testator's intention, the will must be taken as a whole, and force and effect be given, if possible, to every part of it.

3. Wills—In Ascertaining Testator's Intention, Words are Given Their Ordinary Meaning.—In ascertaining testator's intention, words used in will are to be given their ordinary meaning.

4. Wills—In Ascertaining Testator's Intention, it may Become Necessary to Consider all Words and Phrases of Will and Items Thereof.—In ascertainig testator's intention, it may not be enough to consider only words and phrases to be interpreted, but it may become necessary to consider all words and phrases of will or of item or items under consideration.

5. Wills—Will Giving Property on Death of Legatees to Their "Bodily Heirs," If Any, Otherwise to Charity, Gave Legatees Life Estate; "Bodily Heirs" Being Words of Purchase.—Where testatrices made mutual wills directing that, after death of survivor, land be equally divided among named legatees and that, if either of the two legatees should die leaving no bodily heirs, property was to go to survivor, and, if both died leaving no bodily heirs, then property was to be given to charity named, but if either left bodily heirs "each one's portion shall go to each one's said heirs likewise," legatees named took only a life estate, since words "bodily heirs" were used as words of purchase and in sense of children.

6. Mortgages—Legatee Taking Life Estate Under Will Could Only Mortgage Such Interest.—Legatee under will, taking only a life estate in land, could only mortgage such interest.

Before RICE, J., Aiken, June, 1925.    Reversed.

Action by the First National Bank of Springfield against Mrs. Ethel O. Hutson and others. From a judgment for plaintiff, defendants appeal.

*Messrs. Gunter & Wilder,* and *Henderson & Salley,* for appellants, cite: *Intention of testator should govern in construction of will:* 104 S. C., 455; 113 S. C., 419; 113 S. C., 231; 89 S. C., 565–566. *Words in will given their ordinary and plain import:* 104 S. C., 98; 113 S. C., 420. *Conflicting provisions should be reconciled if possible; where this cannot be done the latest provision must be given effect:* 113 S. C., 231; 105 S. C., 185. *The words "bodily heirs", should be construed to mean children:* 119 S. C., 31; 109 S. C., 58; 77 S. C., 227; 114 S. C., 177; 89 S. C., 561; 71 S. C., 279; 109 S. C., 421; 102 S. C., 182; 104 S. C., 178; 123 S. C., 127. *These wills do not convey a fee-conditional estate because there is no possibility of reverter:* 102 S. C., 182; 2 Bail., 248; 1 Bail., 100. *These wills do not convey a fee-defeasible, with executory devise over, but life estates with contingent remainders with a double aspect:* 102 S. C., 178; 74 S. C., 42. *No fee conditional:* 2 Bail., 248; Sec. 5323, Code; 7 Rich. Eq., 407; 4 Rich Eq., 421.

*Messrs. Williams, Croft & Busbee,* for respondent, cite: *Case at bar governed by:* 1 Rich Eq., 404; 48 S. C., 440; 94 S. C., 308; 103 S. C., 202.

March 7, 1927.

Rehearing denied December 15, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The controversy in this case is over the construction of two wills. About the year 1903, there lived in Aiken county two elderly sisters, Martha E. and Cynthia R. Posey. They made mutual wills, which in substance were the same, the verbiage of the provisions under construction being indenti-

cal. They left their property, in the first instance, to each other for life. With respect to the real estate owned by them, the wills provided that, after the death of the surviving testator, the land should be equally divided among C. C. Bonnett, Lelon P. Bonnett, and Ethel O. Bonnett; C. C. Bonnett taking a life estate, his portion, upon his death, to be equally divided between Lelon and Ethel Bonnett, and provided further:

"Now in the event that Ethel O. Bonnett or Lelon P. Bonnett should die leaving no bodily heirs, then it is my will that all the property to go to the surviving one, and if both should die leaving no bodily heirs, then it is my will that all of the property to be given to the Connie Maxwell Orphanage, but if Ethel O. Bonnett or Lelon P. Bonnett shall die leaving bodily heirs, then I direct that each one's portion shall go to each one's said heirs likewise."

After the death of the devisors, the three devisees named above divided the land among themselves as provided for in the wills, Ethel O. Bonnett, now Mrs. Ethel O. Hutson, one of the plaintiffs in this case, taking as her part a tract of about 156 acres. She subsequently gave a mortgage of $4,200.00 upon this tract to the plaintiff, the First National Bank of Springfield.

When the mortgage became due and was not paid, the plaintiff brought this action to foreclose same. The defendants, other than Ethel O. Hutson and H. M. Hutson (her husband), are the minor children of Ethel O. Hutson.

The matter came on to be heard before his Honor, Judge Rice, who held that, under his construction of the wills, Mrs. Ethel O. Hutson took a fee conditional in the land in question, and that, the condition having been fulfilled by the birth of issue to the said Ethel O. Hutson, she was the owner in fee simple of the said tract of land for the purpose of aliening or incumbering same, and that, under the foreclosure of

the mortgage by the bank, the purchaser at the sale would take good title to the land.

From this decree of Judge Rice, the defendants appeal to this Court. They contend that the Circuit Judge erred· in his construction of the wills, and that Ethel O. Hutson did not take a fee conditional estate in the lands devised her, but that she took only a life estate therein.

The sole question presented by this appeal is: What estate did Ethel O. Hutson take in the real estate devised by the testator? It is elementary in the construction of a will that the intention of the testator, as gathered from the instrument, must prevail unless such intention is in conflict with some well-settled rule of law; that in ascertaining the intention of the testator the will must be taken as a whole, and force and effect must be given, if possible, to every part and portion of it, and that the words used in the will are to be given their ordinary meaning. And it may not be enough to consider only the words or phrases to be interpreted, but it may become necessary to consider all the words and phrases of the will or of the item or items under consideration. *McGee v. Hall,* 26 S. C., 179; 1 S. E., 711; *Buriss v. Burriss,* 104 S. C., 441; 89 S. E., 405; *Burton v. Burton,* 113 S. C., 227; 102 S. E., 282; *Dent v. Dent,* 113 S. C., 416; 102 S. E., 715.

The rule of construction is thus stated in *Roundtree v. Roundtree,* 26 S. C., 450; 2 S. E., 474:

"The object of all construction is to ascertain the intention of the testator, and when that is ascertained it must be carried into effect, provided this can be done consistently with the settled rules of law. But how is the intention to be ascertained? Certainly not by conjecture as to what the testator ought to have done, but by considering what is the plain meaning of the language which he has used, and by giving a careful consideration to· the words of the will as a whole, guided by such rules of law as experience has shown to be

useful in seeking such intention. We are to read the will as a whole, and from its terms ascertain, if practicable, what was in the mind of the testator at the time he executed it. We may also, where the language used is obscure or doubtful, read such language in the light which may be reflected upon it by the circumstances surrounding the testator at the time he executed his will, but such circumstances cannot be resorted to to prove the testator's intention apart from his language."

What was the purpose or intention of the testators in the present case? Let us examine the scheme which they had in mind and to which they desired to give effect in their wills. It is clear that it was the desire of these two sisters to keep their estates intact as long as either should live, so that the survivor should be fully provided for during her lifetime. So we find: In the first place, that the mutual wills provide that the property of the one dying first should go to the other for life. Second, they then made provision that the property should pass at the death of the last surviving sister to their three kinsmen, Ethel O. Bonnett, Lelon P. Bonnett, and C. C. Bonnett, and that, after the death of C. C. Bonnett, who took a life estate under the wills, his portion should be divided between the other two named. If no further provision had been made as to the disposition of the real estate, Lelon P. Bonnett and Ethel O. Bonnett would have taken the property in fee simple. But it was not the testator's intention, as appears from the succeeding provision, that these two devisees should take the lands in fee, for it is immediately provided that in case *either* should die leaving no "bodily heirs," his or her portion should go over to the survivor, which provision clearly defeats the fee of either one so dying. Third, it is then provided that, should *both* die leaving no "bodily heirs," all of the property should go to the Connie Maxwell Orphanage, which provision would defeat the fee of both upon the arising of that contingency.

Fourth, it is clear from the next provision that the testators desired primarily to take care of their kinsmen, and to that end the limitation over to the Orphanage to take effect only upon *entire* failure of issue, and, in order that no doubt might remain as to such intention, they made a direct devise to the "bodily heirs" of each of these two devisees in the following language:

"But if Ethel O. Bonnett or Lelon P. Bonnett shall die leaving bodily heirs, then I direct that each one's portion shall go to each one's said heirs likewise."

It should be noted that the devise under consideration was made, not to Ethel O. Bonnett and the heirs of her body, but, in the first instance, to Ethel O. Bonnett, and later, to her "bodily heirs" if she should die leaving bodily heirs. There is a material distinction between two such devises. Clearly, the first would expressly create a fee conditional; the second manifests the intention of the testators as to the capacity in which the "bodily heirs" shall take—whether as heirs of the donee, the first taker, or directly from the testators themselves as objects of their care. No conclusion can be arrived at, except that it was the clear intention of the testators, as seen from the whole scheme of devise culminating in the provision just quoted, that the words "bodily heirs" were intended to be used, not in their technical sense as words of limitation, but as words of purchase. It is manifest that the testators meant to use the words "bodily heirs" in the sense of children. This being true, it necessarily follows that by implication Ethel O. Bonnett (Hutson) takes a life estate in the lands in question, with remainder to her children living at her death; and, in executing to the plaintiff a mortgage on the said lands, she could only mortgage her interest therein which was her life estate.

It rarely happens that the provisions of any two wills, and the limitations contained therein, are exactly alike. Hence we do not deem it necessary to cite or collate the many de-

cisions of this Court construing wills containing limitations somewhat similar to the ones found in the case at bar. See, however, *McCorkle v. Black,* 7 Rich. Eq., 407, and *Mc-Creary v. Coggeshall,* 74 S. C., 42; 53 S. E., 978; 7 L. R. A., (N. S.), 433; 7 Ann. Cas., 693, cited by appellants.

The learned circuit Judge based his decision upon the authority of *Whitworth v. Stuckey,* 1 Rich. Eq., 404, *Bethea v. Bethea,* 48 S. C., 440; 26 S. E., 716, and that line of cases. We do not question the correctness of the principles of law laid down in those cases, but the present case can be easily differentiated and distinguished from those cases.

For instance, in the case of *Whitworth v. Stuckey,* there was no direct devise, as in the present case, to the lawful issue of A., the first taker, but the devise was to A. for life, and remainder to the lawful issue of his body, and, if he should die without lawful issue living at the time of his death, then over. It was held that the limitation to the lawful issue of his body pointed to an indefinite line of succession, and was therefore too remote for an executory devise, and upon this ground the devise was construed to be a fee conditional.

Again, in the *Bethea case,* an estate was given to A. for life, with remainder to B. and the lawful issue of his body, and, should he die without lawful issue, then to be divided among the other heirs of the testator. It was held that B. took a fee conditional, the superadded clause not modifying or affecting same. It is to be observed that in that case, unlike the case at bar, the devise to B. was expressly a fee conditional, and was not affected or cut down by the superadded clause.

It is to be noted in the case at bar that the devise to the "bodily heirs" is not by way of limitation but is contingent upon there being bodily heirs as survivors of the first taker, and that the devise to such survivors is direct.

Having reached the conclusion that Ethel O. Hutson, the first taker, takes only a life estate in the lands in question, with remainder over to her children living at her death, it follows that the exceptions of the appellants must be sustained, and the judgment of the Circuit Court reversed.

Mr. Chief Justice Watts, Messrs. Justices Cothran and Blease, and Mr. Acting Associate Justice Purdy, concur.

Mr. Justice Cothran: Construing the words "bodily heirs" to mean "children" as should be done under the authorities cited in my dissenting opinion in *Strother v. Folk,* 123 S. C., 127; 115 S. E., 605; I think that the case of *Robert v. Ellis,* 59 S. C., 137; 37 S. E., 250, fully sustains the conclusion of Mr. Justice Stabler.

## On Petition for Rehearing

*Per Curiam.* The respondent has filed a petition in this case asking for a stay of remittitur for two purposes: (1) To request the Court to state the effect of its decision on the judgment, in amount approximately $5,000.00, obtained in the Court below by the respondent against the appellant Mrs. Hutson; and (2) to allow the respondent to present a supplemental brief in support of its petition for rehearing.

This Court is satisfied, after further careful consideration of the case, that the conclusions announced in its opinion heretofore filed are correct, and that, in its consideration of the appeal, no material question, either of law or of fact, has been overlooked or disregarded. The petition for rehearing, therefore, must be denied.

As to the effect of the Court's decision on the money judgment in favor of the bank against Mrs. Hutson, the record for appeal to this Court and the Court's opinion show that the only point involved in the appeal was the construction of the wills of Martha and Cynthia Posey for the purpose of determining what estate Mrs. Hutson took in the real property devised to her by the testators. The reversal,

therefore, affects only that part of the judgment of the lower Court which fixed, under that Court's construction of the wills, Mrs. Hutson's interest in the real estate; it does not in any way affect the money judgment of the bank against Mrs. Hutson or the foreclosure of the mortgage held by the bank as decreed by the Court.   However, as the question has been raised, in order to set the matter at rest it is ordered that the opinion of the Court in this case be amended by adding, after the word "reversed," on the last line in the last paragraph thereof, the following words: "In so far as is involves the construction of the wills under consideration."   With the addition of these words, the opinion stands as the opinion and judgment of this Court.

The petition for rehearing is dismissed, and the order staying the remittitur revoked.

MR. CHIEF JUSTICE WATTS, MESSRS. JUSTICES COTH-RAN, BLEASE and STABLER, and MR. ACTING ASSOCIATE JUSTICE PURDY, concur.