629 S.E.2d 697

**CODY DISCOUNT, INC., Respondent,**

v.

**Audrey MERRITT, Appellant.**

**No. 4102.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2006.

Decided April 10, 2006.

Rehearing Denied May 18, 2006.

---

Jeffrey Falkner Wilkes, of Greenville, for Appellant.

Laura W.H. Teer, & Robert C. Childs, of Greenville, for Respondent.

WILLIAMS, J.:

Audrey Merritt appeals a master-in-equity's decision holding that Cody Discount, Inc. was entitled to evict her from its real property following her default on an installment land contract. We affirm in part, reverse in part, and remand.

## FACTS

On October 27, 1987, Audrey Merritt entered into an installment land contract with Martin and Wilma Baker to purchase a manufactured home and a 100 × 170 foot lot for $44,500. The Bakers informed Merritt that she did not need to file the contract until the property was paid for in full. The contract contained clauses that made the purchase contingent on payments of $450 dollars a month and maintenance of credit life insurance on the premises. The contract further stated that failure to comply with these conditions would entitle the seller to repossess the premises and retain all payments as rent.

Merritt testified the Bakers later informed her the insurance provision would be satisfied as long as she maintained insurance on the premises themselves. Accordingly, she never purchased the credit life policy called for in the contract. She also submitted payments after they were due on several occasions, but the Bakers always accepted the payments and never declared the contract in default. Although she was behind on payments to the Bakers, all past due amounts were satisfied when the Bakers later sold the property to Riley and Doris Jones in May 1989.

After the Joneses purchased the property, Merritt continued making payments of $450 a month. Merritt admitted she also made late payments from time to time to the Joneses, but, as with the Bakers, the Joneses always accepted the payments and never declared her in default. Cody Discount later purchased the property through a bond for title from Mr. Jones in March 2000. However, the property was not actually in Cody Discount's name until Cody took out a mortgage to pay for the property in May 2002.

From March 2000 until January 2002, Ms. Merritt continued to make her payments to Mr. Jones who would, in turn, endorse them over to Cody Discount. In January 2002, Merritt made her last payment to Mr. Jones. At this time, she and Mr. Jones were in negotiations about a payoff amount. Merritt testified that she was going to pay off the house with settlement money stemming from her first husband's death.

Shortly after Cody Discount acquired title to the property, it brought an action in magistrate's court to have Merritt evicted from her property based on her payment history. Soon after the hearing, Janet Cody, as President of Cody Discount, sent Merritt a letter stating that as of October 15, 2002, Merritt had an outstanding balance of $793.17. The letter further explained that interest would continue to accrue and a late fee of $20 would be added each pay period until the balance was paid in full.

On December 20, 2002, Merritt sent a response to Cody Discount via certified mail expressing her desire to pay the balance and tendering a check for $833.17. Although Janet Cody received the letter, the check was never cashed because Cody Discount alleged Merritt owed more than she tendered. It is somewhat unclear exactly how much Cody Discount alleges Merritt still owes as there are several different amounts appearing in the record. For instance, there is the previously mentioned letter drafted by Janet Cody which states a balance of $737.17, Cody Discount's complaint, which states Merritt was delinquent in the amount $793.17 but owed $1,247 dollars in late fees ($2040.17), while at trial it appears Cody Discount was trying to evict Merritt for owing $2,873.[1]

---

1. Janet Cody attributed the incorrect balances to miscalculations based on a faulty amortization schedule.

In addition to Merritt's late payments, Cody Discount argued before the master that it would be impossible for it to convey the property to Merritt as intended in the original contract. This claim of impossibility arises from a series of ordinances passed by Greenville County in 2000, which prevent mobile homes from having direct access to a public street or highway and require them to have access via an interior roadway. Although Merritt has always accessed the property over the same drive and Cody Discount was aware of her contract to purchase the mobile home and lot when they entered into the bond for title with Mr. Jones, Janet Cody stated that she never thought about having to deed her a right of way to use the drive. Through her testimony, Janet Cody made it clear that she did not want to grant Merritt an easement down the existing road because it would "ruin the value of our property." [2] Cody did state that she would be willing to grant Merritt an easement around the property, but Merritt would have to construct a road because none currently exists in that location.

On October 26, 2004, the master-in-equity issued an order ruling partially in each party's favor. Although the master found Merritt defaulted in making payments to each of the owners, he also noted that Merritt had almost paid the entire original balance on the contract. The master went on to rule that forfeiture of the mobile home should be relieved, but forfeiture of the lot should be granted based on the previously mentioned defaults and the fact that Cody Discount could not deed the lot to Merritt without granting her additional interests that would significantly affect its property's value.

## STANDARD OF REVIEW

 Actions to foreclose or cancel an instrument are actions in equity. *Wilder Corp. v. Wilke*, 324 S.C. 570, 576, 479 S.E.2d 510, 513 (1996) (citations omitted). In an action in equity, while this Court is free to take its own view of the preponderance of the evidence, this does not require us to

---

2. The existing road runs though the middle of the approximately 10-acre parcel Cody Discount purchased from the Joneses. Although Janet Cody on more than one occasion suggested that granting Merritt an easement would devalue her property, no evidence was presented to quantify the alleged decrease in value.

disregard the findings of the trial judge who saw and heard the witnesses and, accordingly, was in a better position to judge their credibility. *Donnan v. Mariner,* 339 S.C. 621, 626, 529 S.E.2d 754, 757 (Ct.App.2000).

## LAW / ANALYSIS

■ On appeal, Merritt argues the master-in-equity erred in holding that "it was fair and equitable that [her] right in the real property should be forfeited and further, that any forfeiture should not be relieved." We agree.

■ The courts of South Carolina have long held that forfeitures or penalties are not favored in either law or equity. *Lewis v. Premium Inv. Corp.,* 351 S.C. 167, 172, 568 S.E.2d 361, 363 (2002); *Ducworth v. Neely,* 319 S.C. 158, 162, 459 S.E.2d 896, 899 (Ct.App.1995); *see also Litchfield Co. of South Carolina, Inc. v. Kiriakides,* 290 S.C. 220, 349 S.E.2d 344 (Ct.App.1986); *Alexander v. Herndon,* 84 S.C. 181, 65 S.E. 1048 (1909). Concomitantly, "a provision in an installment land contract declaring forfeiture in the event of purchaser default can, in particular circumstances, constitute a penalty." *Lewis,* 351 S.C. at 172, 568 S.E.2d at 364.

■ In *Lewis,* our supreme court held that in certain contractual instances where a stipulated sum (in the event of default) constitutes a penalty, "it would be inequitable to enforce the forfeiture provision without first allowing the purchaser an opportunity to redeem the installment contract by paying the entire purchase price." *Id.* As noted in the master's order, there are a number of case-specific factors to consider in making such a determination. These factors include the amount of equity the purchaser has accumulated, the length and number of defaults, the amount of forfeiture, the speed in which equity is sought, and the amount of money the purchaser would forfeit in relation to the purchase price of the property. *Id.* at 174, n. 5, 568 S.E.2d at 364, n. 5.

Presumably based in part on these factors, the master-in-equity found that Cody Discount's right to obtain ownership of Merritt's home should be relieved, but that its right to repossess the land should not be relieved. While we agree with the master as to the mobile home, after a review of the record we

find the master should have granted Merritt the right to redeem the installment contract by paying the remainder of the purchase price. While Cody Discount makes much of the fact that granting Merritt an easement across the preexisting road, as her only means of access to the property, would "significantly" affect the value of its property, there is no evidence in the record to quantify such a claim.

Although it is true that Merritt has made late payments on and off since the inception of the land sale contract, it is also true that all of the property owners, including Cody Discount, continued to accept the payments without declaring her in default. It was only when Merritt was within approximately $1,000 of paying off an original contract price of $44,500 that Cody Discount decided it would no longer be advantageous for them to transfer the property and thus they brought the current action.

As such, we affirm the master's decision as to the mobile home, reverse as to forfeiture of the lot, and remand for a determination of the amount Merritt owes to redeem the property.

**AFFIRMED in part, REVERSED in part, and RE-MANDED.[3]**

BEATTY, SHORT and WILLIAMS, JJ., concur.

---

3. We decide this case without oral argument pursuant to Rule 215, SCACR.