**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Kathleen A. Grant, Dylan T. Grant, Devin D. Grant, and Andrea J. Grant, Appellants,

v.

Nationstar Mortgage, LLC, Respondent.

Appellate Case No. 2019-001732

———————————

Appeal From Charleston County
Bentley Price, Circuit Court Judge

———————————

Unpublished Opinion No. 2023-UP-264
Heard December 5, 2022 – Filed July 12, 2023

———————————

**AFFIRMED**

———————————

Daniel Scott Slotchiver and Stephen Michael Slotchiver, both of Slotchiver & Slotchiver, LLP, of Mount Pleasant; Jesse Sanchez, of The Law Office of Jesse Sanchez, of Charleston; and Stephen A. Spitz, of A Business Law Firm, of Charleston, all for Appellants.

Lawrence Michael Hershon, of The Hershon Law Firm, P.A., of Charleston, for Respondent.

———————————

**PER CURIAM:** In this declaratory judgment action, Appellants Kathleen A. Grant, Dylan T. Grant, Devin D. Grant, and Andrea J. Grant (collectively, Appellants) seek review of an order of the circuit court finding that Respondent, Nationstar Mortgage, LLC's (Nationstar) mortgage is a valid encumbrance on property owned by Appellants. Appellants argue the court erred in finding that: (1) the current action is an action at law; (2) Nationstar had no duty to benefit the remaindermen; and (3) the life tenant had the authority to mortgage the property. We affirm as modified.

## FACTS

On June 25, 1987, Roberta R. Grant (Roberta) purchased a property at 1 Wall Street, Charleston, South Carolina (the Property). On December 28, 1988, Roberta passed away and left her Last Will and Testament (the Will) granting her husband, David E. Grant (David), a life estate interest in the property. Under the terms of the Will, David was named as the executor of the estate and the trustee of the Will's testamentary trust, and Appellants were named as remaindermen.

At the time of Roberta's death, there were two mortgages—in the amounts of $50,000 and $110,000—on the Property. From May 2, 1990, to March 14, 2007, David refinanced and consolidated the existing mortgages on the property and executed new mortgages. The subject of this appeal is the March 14, 2007 mortgage executed and delivered to Countrywide Home Loans (Countrywide) in the amount of $625,000. On September 3, 2013, the mortgage was assigned to Nationstar. On July 3, 2016, David passed away and Appellant Kathleen Grant was appointed as the personal representative of his estate. As of July 16, 2019, the most recent appraisal valued the property at $1,100,000, and the remaining balance of the mortgage was $669,984.89.

On August 26, 2017, Appellants filed a declaratory judgment action asking the circuit court to declare whether the mortgage on the property was proper noting their position "that it was not proper or lawful to put permanent mortgages on the property". On August 14, 2019, the circuit court denied the requested relief, finding that "Nationstar's mortgage was a valid encumbrance on the Property both under the express terms of the Will and the testamentary trust created under the Will." This appeal followed.

## STANDARD OF REVIEW

The parties disagree as to the proper standard of review in the present case. Appellants contend that the trial court erred in characterizing this action as an action at law. We agree.

The "[c]haracterization of an 'action as equitable or legal depends on the appellant's "main purpose" in bringing the action.'" *Verenes v. Alvanos*, 387 S.C. 11, 16, 690 S.E.2d 771, 773 (2010) (quoting *Ins. Fin. Servs., Inc. v. S.C. Ins. Co.*, 271 S.C. 289, 293, 247 S.E.2d 315, 318 (1978)). "The main purpose of the action should generally be ascertained from the body of the complaint." *Id*. The "main purpose [is] reflected by the nature of the pleadings, evidence, and character of the relief sought." *Lollis v. Dutton*, 421 S.C. 467, 478, 807 S.E.2d 723, 728 (Ct. App. 2017) (quoting *Fesmire v. Digh*, 385 S.C. 296, 303, 683 S.E.2d 803, 807 (Ct. App. 2009)). "[W]hen necessary, resort may also be had to the prayer for relief and any other facts and circumstances which throw light upon the main purpose of the action." *Sloan v. Greenville Cnty.*, 380 S.C. 528, 534, 670 S.E.2d 663, 667 (Ct. App. 2009). "[W]here the complaint states facts which would support either a legal or an equitable action, the relief demanded will ordinarily determine its character." *Bramlett v. Young*, 229 S.C. 519, 531, 93 S.E.2d 873, 879 (1956) (quoting 1 C.J.S. *Actions*, § 54).

"The construction of a will is an action at law. . . [but a]n action to construe or interpret a testamentary trust is equitable in nature." *Holcombe-Burdette v. Bank of Am.*, 371 S.C. 648, 654-55, 640 S.E.2d 480, 483 (Ct. App. 2006). Further, "[a]ctions to foreclose or cancel an instrument are [also] actions in equity." *Cody Disc., Inc. v. Merritt*, 368 S.C. 570, 574, 629 S.E.2d 697, 699 (Ct. App. 2006).

The body of the complaint in the current action states in pertinent part:

> This is a Declaratory Judgment Action filed pursuant to S.C. Code [Ann. § 15-53-10 (2017)]. *It asks the Court to declare whether or not certain mortgages are valid* vis-à-vis four remaindermen / remainderwomen who only recently came into possession of certain property in Charleston, South Carolina and discovered that the property they inherited is deeply encumbered by mortgages that may well not be entirely proper.
>
> This action is filed specifically under S.C. Code Sections 15-53-20 and 15-53-30 and asks the [c]ourt to interpret various wills and to declare the meaning of those

> documents in light of the law [in relation] to the mortgages now on their property but placed there without their knowledge or consent.

(emphasis added).  The prayer for relief "request[s] that the [circuit c]ourt inquire into this matter and determine whether or not the mortgages[1] are indeed valid and lawful with regard to the [Appellants] in this case."

In *Holcombe-Burdette*, this court recognized that the differing standards of review between the interpretation of wills and trusts presented an "obvious conundrum" but declined to resolve the dilemma because it would not affect the outcome of that case. *Holcombe-Burdette* 371 S.C. at 655, 640 S.E.2d at 483. In the present case, the will and embedded testamentary trust present a similar conundrum. However, unlike the situation in *Holcombe-Burdette*, the Appellants' prayer for relief provides another consideration that we believe controls the analysis.  *See Bramlett* 229 S.C. at 531, 93 S.E.2d at 879 ("[W]here the complaint states facts which would support either a legal or an equitable action, the relief demanded will ordinarily determine its character.") (quoting 1 C.J.S., *Actions* § 54).  Because the prayer for relief asks the court to determine the validity of the mortgage, we find the character of the action is one in equity.  *See Cody Disc., Inc.*, 368 S.C. at 574, 629 S.E.2d at 699 ("Actions to foreclose or cancel an instrument are actions in equity.").

"In an action in equity, while this [c]ourt is free to take its own view of the preponderance of the evidence, this does not require us to disregard the findings of the trial judge who saw and heard the witnesses and, accordingly, was in a better position to judge their credibility." *Id.* at 574-75, 629 S.E.2d at 699.

## LAW/ANALYSIS

### I.    David's Authority to Mortgage the Property

Appellants argue that the circuit court erred in finding that David had the authority to mortgage the property "as he saw fit" because David was authorized to mortgage the Property only to protect the interests of the remaindermen. We disagree.

---

[1]The Appellants' complaint asked the circuit court to inquire into "mortgages" instead of the "mortgage."  The only mortgage at issue on appeal is the March 14, 2007 mortgage in the amount of $625,000.

Long-established South Carolina precedent dictates that a life tenant may execute a mortgage to the fullest extent of their life estate interest. *See First Nat. Bank v. Hutson*, 142 S.C. 239, 244, 140 S.E. 596, 597 (1927) (finding that a life tenant could mortgage her interest in a life estate even when her children had a remainder interest); *see also Bethea v. Bass*, 240 S.C. 398, 412, 126 S.E.2d 354, 360 (1962) (clarifying that a mortgage executed by a life tenant covers only his life estate interest and not a fee interest). This is particularly true when a will explicitly carves out a life estate interest with the power of disposition. *See Johnson v. Waldrop*, 256 S.C. 372, 375, 182 S.E.2d 730, 731 (1971) (finding that "a life estate, with the complete power to dispose and consume[,]" was a valid devise).

Article V, Section 1(d) of the Will defines the executor's rights and obligations in pertinent part:

> My husband, David E. Grant, shall be obligated to invest and reinvest the properties from time to time constituting the assets of such life estate, in order to protect the remaindermen taking after him[,] and in furtherance of said obligation *he shall have and possess full power and authority to mortgage* or pledge all or any portion of such property, either realty or personalty, or both[,] in fee simple, absolutely, by warranty deed or otherwise, and such conveyance may be public or by private sale, and at such prices and upon such terms and conditions as he *in his absolute discretion may deem most advantageous*, taking into account the protection of remaindermen taking after him. All resulting proceeds shall continue to be properties of such life estate.

(emphases added). In David's capacity as trustee of the testamentary trust, the Will reaffirms his authority "[t]o borrow money for any purpose, either from [himself] or from others, and to mortgage or pledge any trust property[.]"

The above provisions reflect Roberta's unambiguous intent to grant David absolute discretion to mortgage the Property. The circuit court, in stating that David had the authority to mortgage the Property "as he saw fit," echoed this express language in the Will.

Appellants argue that because David was subject to express limitations in the Will, he could not mortgage the Property. Specifically, Appellants challenge the

circuit court's finding that David had the authority to mortgage the Property "as he saw fit" because this finding is incongruent with the following limitation in Article V, Section 1(b) of the Will:

> [David] shall not in any event be entitled, directly or indirectly, to consume or otherwise retain any principal of this life estate absolutely as his own, or have or possess any substantially equivalent powers or rights, and the provisions of this article and of this [w]ill in general shall be construed accordingly.

We find this provision restricts David from converting the mortgage proceeds to fee simple.[2] However, we do not believe that this limitation conflicts with David's wide latitude to mortgage the property as he deemed appropriate. Therefore, we find that the circuit court did not err in finding David had the authority to mortgage the property as he saw fit.

## II.    Countrywide's Duty to Remaindermen

Appellants next argue that if David lacked the authority to mortgage the property, Countrywide—as a "sophisticated financial institution"—had a duty to look after the remaindermen's interests. We disagree.

### A. Roberta's Testamentary Intent

"The paramount rule of will construction is to determine and give effect to the testator's intent." *Holcombe-Burdette*, 371 S.C. at 655, 640 S.E.2d at 483. "In construing the provisions of a will, every effort must be made to determine and carry out the intentions of the testator." *Id*. at 656, 640 S.E.2d at 483. "The rules of construction that apply in this State to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." S.C. Code Ann. § 62-7-112 (2022).

Here, the testamentary trust embedded within the Will lists powers which apply to "[a]ny [t]rustee . . . and any others that may be granted by law[.]" This part of the trust includes a provision that states "[n]o person paying money or delivering

---

[2] There was no evidence presented at trial that David misused the proceeds of the mortgage by conversion or retention. The circuit court found that David's "utiliz[ation of] the proceeds is inconsequential as to the findings of this [c]ourt[.]"

any property to any [t]rustee need[s] to see to its application."   In her Will, Roberta states that "I appoint my husband, David E. Grant . . . as sole Trustee of this Will[.]" Countrywide was delivering money to David as the appointed trustee in exchange for a mortgage on the Property.  Appellants suggest that Countrywide had a duty to inquire into David's handling of the mortgage funds.  However, according to the Trust's explicit terms, Countrywide had no duty to oversee its administration on behalf of the remaindermen.

Appellants argue that "the wide range of liberties afforded to possible [t]rustees under the Will . . . specifically [do] not apply to David."  This is in reference to the provision in the will that states "[David] shall not in any event be entitled, directly or indirectly, to consume or otherwise retain any of the principal of this life estate absolutely as his own[.]"  This limitation protects the nature of the money or property in the life estate because "[David is] obligated to invest and reinvest the properties from time to time[.]"  However, we do not believe this limiting provision may be translated into a duty owed by a mortgagee to the remaindermen.  Such a reading would contravene Roberta's intent in excluding third-party obligations.  *See Holcombe-Burdette*, 371 S.C. at 656, 640 S.E.2d at 483. ("In construing the provisions of a will, every effort must be made to determine and carry out the intentions of the testator.").  Therefore, we find the circuit court did not err in finding that Nationstar (and Countrywide) had no duty to benefit the remaindermen.

## B. Countrywide's Duty as a "Sophisticated Financial Institution"

Appellants also argue that as a "sophisticated financial institution," Countrywide had a duty to protect the remaindermen's interest.  We disagree.

"The normal bank-depositor arrangement creates a creditor-debtor relationship rather than a fiduciary one." *Burwell v. S.C. Nat. Bank*, 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986).  "In limited circumstances, . . . a fiduciary relationship may be created between a bank and a customer if the bank undertakes to advise the customer as a part of the services the bank offers." *Id*.  However, where there is no evidence of a special relationship beyond that of a typical creditor-debtor relationship, no fiduciary relationship is created. *See Hotel & Motel Holdings, LLC v. BJC Enterprises, LLC*, 414 S.C. 635, 654, 780 S.E.2d 263, 273 (Ct. App. 2015) (finding that because there was no evidence that a debtor reposed a special trust in a creditor, a fiduciary relationship was not created).

Appellants hang their hat on a footnote in *Wachovia Bank, N.A. v. Coffey* stating that "sophisticated financial institutions that prepare mortgages purporting to encumber a customer's property must ensure that the customer in fact holds a legal interest in that property so as to protect all pertinent interests." 404 S.C. 421, 426 n.1, 746 S.E.2d 35, 38 n.1 (2013). Appellants' reliance upon this statement, in isolation, decontextualizes its meaning and misconstrues longstanding South Carolina precedent.

The dispositive question in *Wachovia* was whether a bank may foreclose on an invalid mortgage. *Id*. at 425, 746 S.E.2d at 38. In *Wachovia*, a husband "obtained a $125,000 home equity line of credit from [the lender], and secured the loan with the couple's residence, which was titled in [his w]ife's name only." *Id*. Our supreme court found that the lender "never possessed a valid mortgage on the property and cannot pursue an action against [the w]ife related to that mortgage." *Id*. at 425–26, 746 S.E.2d at 38. As a result of the lender's flagrant disregard of proper title, the court cautioned against "allow[ing] lenders to ameliorate their complete failure to exercise proper due diligence at the expense of third parties." *Id.* at 426 n.1, 746 S.E.2d at 38 n.1.

Here, David had the express authority to mortgage the property by virtue of his status as the executor of Roberta's estate and trustee of her testamentary trust. Unlike the situation in *Wachovia*, there was no reason for Countrywide to be concerned that David did not have the authority to mortgage the property. We find that Countrywide had neither a fiduciary responsibility to warn the remaindermen that a mortgage had been levied upon the property nor the authority to overrule David's decision to do so. Therefore, we find Countrywide—and Nationstar as its successor in interest—had no duty to protect the remaindermen.

## CONCLUSION

Accordingly, we affirm the circuit court's order as modified to reflect the proper designation of the action as one in equity.

**AFFIRMED.**

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**